METTLER vs. THE EASTON AND AMBOY RAILROAD COMPANY.

1. Where land has been taken under the exercise of the right of eminent domain, and a question is pending in a court of law as to the amount of compensation to which the land owner is entitled, he will be protected in his constitutional right to possession of his property, until his compensation be ascertained and paid or tendered to him ; and the company in whose favor the condemnation is made, will not be permitted to take possession of the land on tendering so much of the compensation as is not in dispute, but will be restrained from so doing.

2. To secure the land owner in his constitutional right, and at the same time to spare the company unnecessary delay, the court will, on the latter paying the land owner so much of the compensation as is undisputed, and the costs of the suit in this court, and paying into court an amount sufficient to cover the disputed claim, to the end that the land owner may have the same if adjudged by the court of law to be entitled thereto, permit the company to take possession of the land.

On motion to dissolve injunction.

Mr. J. G. Shipman and Mr. T. N. McCarter, for the motion.

Mr. J. F. Dumont, contra.

Mettler *v.* Easton and Amboy Railroad Co.

THE CHANCELLOR.

By the charter of the Easton and Amboy Railroad Company, it is provided that payment or tender of payment, of all damages for the occupancy of lands through which the railroad may be laid out, shall be made before the company, or any person under their direction or employ, shall enter upon or break ground, on any land taken by them for their road, except for the purpose of surveying and laying out the road, unless the consent of the owner or owners of such land be had and obtained. It is further provided, that in case the company and the land owner cannot agree for the purchase of the land, commissioners may be appointed to appraise the land and assess the damages, who are to make a just and equitable estimate or appraisement of the value of the land and assessment of the damages to be paid by the company for the land and damages. Their report is to be made in writing, under their hands and seals, or the hands and seals of any two of them, and to be filed within ten days after making their assessment and appraisement, together with a description of the premises, and their appointment and oaths or affirmations, in the clerk's office of the county in which the lands are situated, to remain on record therein. The charter declares that the report, or a copy thereof, certified by the clerk of the county, shall, at all times, be considered as plenary evidence of the right of the company, to have, hold, use, occupy and enjoy the land. It also provides, that in case of dissatisfaction on the part of the company or the land owner, with the report, application may be made to the Justices of the Supreme Court, at the next term after filing the report, and that that court shall have power, on good cause shown, to set the report aside and direct an issue for the trial of the controversy between the parties, and to order that a jury be struck, and a view of the premises had, and that the issue be tried at the next Circuit Court, to be holden in the county where the land is situated, upon the like notice and in the same manner as the other issues in the Supreme Court are tried, and that it shall be the duty of the jury to assess the

value of the land and the damages sustained, and if they find
a greater sum than the commissioners awarded, in favor of the
owner, judgment thereon with costs shall be entered against
the company and execution awarded therefor; but if the
jury shall be applied for by the owner, and shall find the
same or a less sum than the company shall have offered, or
the commissioners awarded, the costs shall be paid by the
applicant, and either deducted from the sum found by the
jury or execution awarded therefor, as the court shall direct.
The charter further provides, that the application shall not
prevent the company from taking the land on filing the re-
port, the value and damages being first paid, or upon a re-
fusal to receive the same upon tender thereof, or the owner
being under any legal disability, the same being first paid
into the Court of Chancery.

The defendants caused to be condemned for their road, a
lot of land belonging to the complainant, in Phillipsburg.
Being unable to agree with him as to the value of the prop-
erty, commissioners were appointed, who awarded him for the
value of the land and damages, $4120. The whole of the
complainant's land was taken, so that no damages were
awarded to him for injury to remaining property. The dam-
ages were awarded in respect to the improvements, which con-
sisted of a dwelling-house, &c., on the lot. The report was
duly filed. Both parties applied to the Supreme Court,
under the charter, and the report was set aside. A consoli-
dation of the causes was ordered, and the issue was tried at
the Warren Circuit, at the last April term. The jury found
a verdict for $1155, for the value of the land, and $2765, for
damages. By direction of the judge who presided at the
trial, they found also, specially, the interest $275.92, from the
date of the award, May 31st, 1873, to the first day of the
then next term of the Supreme Court. The sums found for
the value of the land and damages, are together, $200 less
than the amount awarded by the commissioners. On the
return of the *postea*, motion was made on behalf of the com-
pany, that judgment be entered for the value of the land and

damages only, as specially found by the jury, with deduction of the costs or an award of execution for the costs. The court did not, at that time, dispose of the application, but held it over for advisement till the next term, which will be held in November next. On the 14th of August last, the company, being desirous of occupying the land, tendered to the complainant the amount found by the jury, for the value of the land and damages only, which was refused. They thereupon paid the amount of the tender, into this court, and took possession of the land and laid thereon their construction track. The complainant filed his bill for an injunction in the premises, which was ordered. Motion is now made to dissolve the injunction for want of equity in the bill. I do not deem it necessary to pass upon the objection made to the verification of the bill. All the facts in the case were admitted by the counsel on the argument, and there is no dispute or difference as to any of them. It will be far more satisfactory to dispose of the motion on the merits.

The report is, by the charter, made plenary evidence of the right of the company to have, hold, use, occupy, possess and enjoy the land, and the charter provides, that they may take possession accordingly, notwithstanding the application to the Supreme Court, on which the report may be set aside. The company claim that they have thus, by the report, obtained title, and that by the seventh section of the charter, they are entitled to possession, on payment of tender of "all damages for the occupancy" of the land, and they insist that they have actually and literally tendered to the complainant, all damages for such occupancy. But they cannot obtain title to the complainant's land without making a just compensation, and he and they having failed to agree, such compensation is to be ascertained by the means provided in the charter, and on payment or tender of it when ascertained, the company will get title, and not until then. And, although the charter gives them the right to take possession, on paying or tendering damages for the occupancy, the term damages there used, signifies the value of the land and damages.

In *Browning* v. *Camden and Woodbury Railroad Company,* 3 *Green's Ch. R.* 47, judicial construction was put by this court on a section like the seventh section of this charter, and it was held that the term occupancy was used by the legislature to express all the right and interest which the company could acquire in the land, and that the company were not entitled to possession until they should have paid, or tendered the amount found by the commissioners, or in case of appeal, by the jury; in other words, all that the land owner was entitled to receive for his compensation for the condemnation. In that case, pending an appeal, the company tendered the amount awarded by the commissioners, which was refused, and they thereupon proceeded to take possession. An injunction was issued to restrain them, which the court, after argument, refused to dissolve.

In the case before me, the company, by their tender, have assumed that the amount due the complainant was the sum they tendered. Whether it was so or not, remains to be determined by the judgment of the Supreme Court. The complainant insists that the sum found for interest, is to be regarded as part of the damages. The jury were directed to find the interest, specially, probably in view of the question whether the complainant may not, by reason of the condemnation, be entitled to interest on the amount of the value and damages, from the time of condemnation, notwithstanding the fact that he has since then had possession of the premises. The condemnation deprived him of his full dominion over his property. From that time he could not sell, lease, or pledge it. At most, he could only occupy it until his compensation should have been fixed, and paid or tendered to him. He was entitled to such occupation, and could not be compelled to yield it until payment or tender of just compensation. If the complainant is entitled to the sum found for interest, it is as part of that compensation. If he is entitled to it, the tender was not sufficient. Until he shall have been adjudged not to be entitled to it, the company cannot obtain the right of possession by tender of part only of the amount

found by the jury. They cannot be permitted to assume that the adjudication of the Supreme Court will be adverse to him. The judge directed the jury to find the interest, because the complainant might be lawfully entitled to receive it. For the sake of convenience, and to save expense and trouble, he directed them to find it specially, so that if the complainant is entitled to it he may have it; and if not, it may be readily disallowed. Had he given no such direction, the amount would have made an undistinguishable part of the verdict. A grave question exists as to whether the complainant is entitled to it, or not. He cannot be required to waive his claim, nor to do any act by which he may seem to do so. The tender was insufficient. The suggestion that the pecuniary responsibility of the company is such as to remove all ground for apprehension as to the payment of the amount of the interest and costs if the complainant shall be adjudged to be entitled to them, cannot weigh with the court in disposing of the legal right of the company to take possession of the complainant's property, without first making just compensation to him therefor.

But there is another aspect to this case. There is no question or dispute between the parties, except as above stated. The company are in need of the land, for the purpose of constructing their road. They are willing, as shown by the tender, to pay the complainant the amount of the value and damages found by the jury, and they are also willing to pay him the interest and costs if he shall be adjudged to be entitled to them. They ought not to be unnecessarily impeded in the prosecution of their work, which is a matter of great public concern. Nor ought they to be compelled to pay the interest and costs before the complainant shall have been adjudged to be entitled to them. If they will pay into this court a sum sufficient to cover the interest and costs, to the end that it may be paid to the complainant if he shall be adjudged to be entitled to them, and also pay the complainant the costs of this suit, with the costs of an order for the pay-

ment to him of the money deposited, and the per centage due the clerk on the deposit, the injunction will be dissolved, otherwise the motion will be denied.